IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK CAPOZIO,** *et al.* | : | CIVIL ACTION |
| *Plaintiffs* | : | |
| | : | NO. 16-5235 |
| v. | : | |
| | : | |
| **JP MORGAN CHASE BANK, NA** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 NOVEMBER 7, 2017

# MEMORANDUM OPINION

**INTRODUCTION**

Presently before this Court is the *motion to dismiss* filed by Defendant JP Morgan Chase Bank, NA ("Defendant" or "Chase"), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), in which Defendant seeks the dismissal of all of the federal and state claims asserted against it by Plaintiffs Mark Capozio and Linda Capozio ("Plaintiffs"). [ECF 13]. Plaintiffs have opposed the motion. [ECF 16]. The issues raised in the motion to dismiss have been fully briefed[1] and are now ripe for disposition. For the reasons stated herein, Defendant's motion to dismiss is granted, *in part*, and denied, *in part*.

**BACKGROUND**

On December 27, 2016, Plaintiffs filed an amended class action complaint against Defendant essentially claiming that Defendant has uniformly engaged in illegal and deceptive business practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*, the Pennsylvania Unfair Trade Practices and Consumer Protection Laws Act

---

[1] In adjudicating Defendant's motion to dismiss, Defendant's reply, [ECF 18], and the parties' supplemental briefs were also considered. [ECF 20, 21, 23 and 25].

("UTPCPL"), 73 Pa. Cons. Stat. §201-1, *et seq.*, the Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Cons. Stat. §2270.1, *et seq.*, (collectively, "Pennsylvania's Consumer Protection Laws"), the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2605, *et seq.*, and Section 524 of the United States Bankruptcy Code, specifically the discharge injunction.[2] [ECF 9]. In essence, Plaintiffs contend that Defendant failed to honor the parties' negotiated agreement that Plaintiffs' future mortgage and escrow payments would not include a sum for insurance premiums, and as a consequence, Defendant misapplied Plaintiffs' monthly mortgage payments resulting in the incurrence of late fees and other penalties.

Defendant filed the underlying motion to dismiss and argues that Plaintiffs have failed to allege facts sufficient to sustain their pleading burden for each of their claims. [ECF 13]. When ruling on Defendant's motion to dismiss, this Court must accept, as true, all relevant and pertinent factual allegations in the amended complaint and construe these facts in the light most favorable to Plaintiffs. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The salient allegations of the amended complaint are summarized as follows:

> On January 23, 2008, Plaintiffs filed for Chapter 13 bankruptcy protection. (Am. Compl. at ¶10). On December 26, 2009, Citi Residential Lending, Inc., sold Plaintiffs' mortgage, note, and service rights to Defendant. (*Id*. at ¶11(d)-(e)). When the loan was transferred to Defendant, the loan was in default. (*Id*. at ¶91). On March 13, 2013, Plaintiffs' bankruptcy trustee sent Defendant a Notice of Cure Payment, "proclaiming that, unless Chase . . . challenged the discharge, the mortgage arrears would be deemed 'cured,' and, therefore, current." (*Id*. at ¶18). Defendant did not respond to the notice. (*Id*.). Plaintiffs were discharged from bankruptcy on October 24, 2013. (*Id*. at ¶10).
>
> By letter dated December 28, 2015, Defendant transmitted to Plaintiffs a separate loan modification agreement (the "Loan Modification"), which was subsequently edited by the parties, with such edits initialed. (*Id*. at ¶27, Exs. F-1

---

[2] In its motion to dismiss, Defendant seeks dismissal of Count III, which alleges a violation of 11 U.S.C. §524, and any claim premised on the Fair Credit Reporting Act, 15 U.S.C. §1681. In their response, Plaintiffs concede that these claims are subject to dismissal. [ECF 16-4 at p. 25-26]. Accordingly, Count III and any claims premised on the Fair Credit Reporting Act are dismissed.

2

and F-3). The Loan Modification with the initialed edits was signed by the parties on December 30, 2015. (*Id.* at Ex. F-3). Plaintiffs contend that these documents evidence and/or memorialize the parties' agreement that Plaintiffs' future mortgage payments were not to include sums for insurance premiums to be escrowed.[3]

On April 1, 2016, and thereafter, Plaintiffs made monthly mortgage payments which did not include an amount for insurance premiums escrow. (Am. Compl. at ¶¶49-63). Defendant placed what it deemed to be the insufficient payments in "suspense" account, resulting in Plaintiffs' mortgage account to be, in effect, a month late. (*Id.* at ¶¶52-53). Defendant subsequently applied late charges to Plaintiffs' mortgage account. (*Id.* at ¶¶57, 59, 61, 63).

On March 10, 2016, Plaintiffs sent Defendant what Plaintiffs contend was a "Qualified Written Request" ("QWR") under RESPA, to which Plaintiffs allege Defendant did not respond fully and timely. (*Id.* at ¶¶40, 43, Ex. N).

**LEGAL STANDARD**

A court may grant a motion to dismiss an action under Rule 12(b)(6) if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief: it must "show such an entitlement with its facts." *Id.* (citations omitted).

To determine the sufficiency of a complaint, "a court . . . must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, a court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court must identify allegations that are merely legal conclusions "because they . . .

---

[3] Defendant disagrees with this interpretation. The content of these particular writings, to the extent relevant, will be discussed more fully in the body of this Memorandum Opinion.

3

are not entitled to the assumption of truth." *Id.* While a complaint need not assert detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Third, a court should assume the veracity of all well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679).

A court may determine that a complaint's factual allegations are plausible if the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly*, 809 F.3d at 786 (citations omitted). Reviewing the plausibility of the complaint is a "context-specific" inquiry and requires a court to "draw on its experience and common sense." *Iqbal*, 556 U.S. at 663-64.

**DISCUSSION**

As noted, Plaintiffs assert that Defendant violated various federal and state statutes, including the FDCPA, RESPA, and Pennsylvania's Consumer Protection Laws. In its motion to

4

dismiss, Defendant argues that each of the claims should be dismissed because Plaintiffs have failed to allege facts sufficient to state a claim. Plaintiffs' claims and Defendant's arguments in opposition thereto are addressed *infra*.

*Plaintiffs' FDCPA Claims*

At Count I, Plaintiffs allege that Defendant has violated the FDCPA by engaging in various prohibited practices as a "debt collector." Defendant moves to dismiss this claim as a matter of law on the basis that it is not a "debt collector" as the term is defined in the FDCPA because it is alleged to be the owner of the mortgage loan at issue and is not "in any business the principal purpose of which is the collection of any debts." In light of the United States Supreme Court's recent decision in *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), which expressly abrogated the holding of *Federal Trade Commission v. Check Investors, Inc.*, 502 F.3d 159 (3d Cir. 2007), this Court agrees with Defendant.

At issue in *Henson* was whether Santander Consumer USA Inc., ("Santander"), which "purchased the defaulted loans from CitiFinancial" and then sought to collect on those loans, was a "debt collector" for purposes of the FDCPA. 137 S. Ct. at 1720. The Court of Appeals for the Fourth Circuit had ruled in Santander's favor, holding that Santander was not seeking to collect on debts "owed . . . another," as required to meet the statutory definition of a "debt collector," but that Santander "sought instead only to collect debts that it purchased and owned." *Id*. at 1721. At the time, a circuit split existed on the issue, which included the Third Circuit's contrary decision in *Federal Trade Commission, supra*. The Supreme Court resolved the split and affirmed the decision of the Fourth Circuit, holding that Santander was not a "debt collector" even though, like Defendant here, it had acquired the debt at issue at a time when the loan was in default:

> And by its plain terms this language seems to focus our attention
> on third party collection agents working for a debt owner—not on
> a debt owner seeking to collect debts for itself. Neither does this
> language appear to suggest that we should care how a debt owner
> came to be a debt owner—whether the owner originated the debt
> or came by it only through a later purchase. All that matters is
> whether the target of the lawsuit regularly seeks to collect debts for
> its own account or does so for "another." And given that, it would
> seem a debt purchaser like Santander may indeed collect debts for
> its own account without triggering the statutory definition in
> dispute, just as the Fourth Circuit explained.

*Id.* at 1721–22. As such, the Supreme Court has now clarified that Congress did not intend for debt buyers to be considered debt collectors for the purposes of the Act, where the debt buyer attempted to collect debts which the debt buyer owned. *Id.* at 1724.

Here, in their amended complaint, Plaintiffs allege that Defendant is a "debt collector" as "defined by [15 U.S.C.] §1692a(6)(F)(iii)" because "Defendant was assigned the Plaintiffs' mortgage while the loan was in default." (Am. Compl. at ¶91). In light of *Henson*, however, the mere assignment of the mortgage loan at issue to Chase while the loan was in default does not make Chase a "debt collector" under the section of the FDCPA on which Plaintiffs expressly rely.

In their supplemental brief, Plaintiffs attempt to reshape their allegations in order to get around the holding in *Henson* and to fit within the "first" FDCPA definition of "debt collector," *i.e.*, "any business the principal purpose of which is the collection of any debts . . . ." 15 U.S.C. §1692a(6). Plaintiffs have wholly failed, however, to allege any facts to support their new contention that Defendant's "principal purpose" is debt collection such that Defendant fits within the alternative definition of "debt collector." Instead, Plaintiffs merely allege that Defendant became the owner and/or mortgage servicer of the underlying mortgage loan after it was in default. (*See* Am. Compl. at ¶91). Notwithstanding the absence of any such allegations in their amended complaint, Plaintiffs argue in their supplemental brief that "Defendant is a 'debt

collector' under the first definition . . . as [Defendant's] main business is the making of loans and the collection of the indebtedness evidenced by its loan portfolio." [ECF 20 at p. 3]. Even if this allegation was included in the amended complaint, however, it would not satisfy Plaintiffs' pleading requirement with respect to Defendant's requisite role as a "debt collector." To the contrary, the inclusion of this purported allegation would merely affirm Defendant's alleged status as the owner of the loan and/or a "creditor" under 15 U.S.C. §1692a(4), and not one of a debt collector. Therefore, in light of the Supreme Court's recent decision in *Henson*, Plaintiffs have not asserted facts sufficient to show that Defendant is a "debt collector" for purposes of the FDCPA. Accordingly, Plaintiffs' FDCPA claims at Count I are dismissed.

### *Plaintiffs' RESPA Claim Premised on Alleged Failure to Respond to a QWR (Count IV)*

Defendant argues that Plaintiffs' RESPA claim at Count IV must be dismissed because the letter correspondence underlying the claim does not meet the statutory requirements of a Qualified Written Request ("QWR"). As argued by Defendant, the applicable statute requires, *inter alia*, that a QWR include enough information to allow a servicer to identify the name and account of the borrower and provide "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. §2605(e)(1)(B)(ii); *see also Bret Binder v. Westar Mortg., Inc.*, 2016 WL 3762710, at *5 (E.D. Pa. July 13, 2016). The absence of such a qualifying QWR requires denial of a claim under §2605. *See, e.g.*, *Orman v. MortgageIT*, 2012 WL 1071219, at *4-5 (E.D. Pa. Mar. 30, 2012).

Here, the letter underlying Plaintiffs' RESPA claim includes eight separate requests for information pertaining to Plaintiffs' mortgage loan. (*See* Am. Compl. at Ex. N). With respect to the escrow, Plaintiffs inquired "why JP Morgan Chase is escrowing our home owners' insurance

7

policy," and "what the escrow advances represent." (*Id.*). Plaintiffs' letter, however, does not anywhere state that Plaintiffs believe that this escrow is in error or why Plaintiffs believe it is in error. (*Id.*). In their response to Defendant's argument, Plaintiffs concede that the letter on which their RESPA claim is based "fails to set forth the reasons why the account is in error." [*See* ECF 16-4 at p. 25]. Thus, in the absence of this required information, Plaintiffs' RESPA claim fails. Accordingly, the claim is dismissed.

Defendant also argues that Plaintiffs' RESPA claim must be dismissed because Plaintiffs have failed to allege actual damages as a result of the alleged violation. Notably, Plaintiffs do not provide any response to this argument. Regardless, this Court agrees with Defendant. In its relevant part, 12 U.S.C. §2605(f) provides that an individual may only recover damages for "any actual damages" suffered and "any additional damages . . . in the case of a pattern or practice of noncompliance . . . ." 12 U.S.C. §2605(f)(1)(A)-(B). Plaintiffs' amended complaint is silent with respect to any actual damages suffered as a result of the alleged RESPA violation. As such, Plaintiffs have failed to allege a RESPA claim. *See Orman*, 2012 WL 1071219, at *5. The claim, therefore, is dismissed for this additional reason.

### *Plaintiffs' Pennsylvania Unfair Trade Practices Claims*

At Count II, Plaintiffs assert Pennsylvania state law claims for unfair trade practices in violation of the FCEUA and the UTPCPL. Unlike the FDCPA (discussed above), the FCEUA prohibits unfair or deceptive collection practices of both debt collectors and creditors. 73 Pa. Cons. Stat. §2270.4; *see also Howe v. Creditors Interchange Receivables Management, LLC (In re Howe)*, 446 B.R. 153, 158 (Bankr. E.D. Pa. 2009). In general, the FCEUA prohibits certain acts of creditors and debt collectors deemed to be unfair or deceptive practices. *See* 73 Pa. Cons.

Stat. §2270.4. With respect to creditors,[4] the FCEUA provides, in its relevant part, the following:

> (5) A creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt.
>
> * * *
>
> (6) A creditor may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:
>
> (i) The collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

*Id*. at §2270.4(5)-(6)(i). In addition, a violation of the FCEUA "shall constitute a violation of the . . . Unfair Trade Practices and Consumer Protection Law." *Id*. at §2270.5(a). Because the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use 73 Pa. Cons. Stat. §201-9.2, the remedial provision of the UTPCPL, to obtain relief. *See Benner v. Bank of America*, 917 F. Supp.2d 338, 359 (E.D. Pa. 2013). Section 201-2(4)(xxi) of the UTPCPL, on which Plaintiffs rely, defines an "unfair method of competition" and "unfair or deceptive acts or practices" as "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." "[T]he UTPCPL is to be liberally construed to effectuate its objective of protecting the

---

[4] As part of this Count II, Plaintiffs assert a claim under Pennsylvania's Consumer Protection Laws premised upon Defendant's violation of the FDCPA. (Am. Compl. at ¶¶116, 119). Because Plaintiffs' FDCPA claim fails as a matter of law, so, too, does any state law claim premised on a violation of the FDCPA. *Cf., Klein v. HSBC Mortgage Services (In re Klein)*, 2010 WL 2680334, at *2 (Bankr. E.D. Pa. June 29, 2010) ("To repeat, the only way that a 'debt collector' can violate [73 Pa. Cons. Stat. §2270.4] is to violate the FDCPA: there is no independent act under [73 Pa. Cons. Stat. §2270.4] pursuant to which a debt collector may violate that statute.").

consumers of this Commonwealth from fraud and unfair or deceptive business practices." *Ash v. Cont'l Ins. Co.,* 932 A.2d 877, 881 (Pa. 2007).

Plaintiffs' remaining state law unfair trade practices claims are premised upon Plaintiffs' contention, as alleged in the amended complaint, that Defendant has wrongfully required Plaintiffs' monthly mortgage payments to Defendant to include a sum for insurance premiums as part of escrow despite the parties' negotiated agreement that Plaintiffs' future monthly mortgage payments would not include insurance premiums as part of escrow. Plaintiffs allege that in failing to abide by the parties' agreement as to escrow, each month Defendant misapplies Plaintiffs' payments, resulting in the assessment of late fees and other charges. (Am. Compl. at ¶28(b)). In support of their claim, Plaintiffs point to language in the Loan Modification and correspondence between Plaintiffs' counsel and Defendant's counsel that preceded the parties' signing of the Loan Modification that clearly reflect an agreement that Plaintiffs' future monthly mortgage payments would not include insurance payments to be escrowed. Defendant disagrees with Plaintiffs' interpretation of the Loan Modification and, in turn, argues that the Loan Modification, along with the incorporated Loan Documents, requires Plaintiffs to escrow insurance premiums and, further, allows for the assessment of fees and/or penalties if Plaintiffs fail to make full, required payments. Defendant also argues that because the Loan Modification is a written, signed, and fully integrated agreement that was intended to include all of the terms of the parties' agreement, the parties and this Court are precluded from relying upon parol evidence to substantiate the terms of the agreement. Defendant further argues that the Loan Modification incorporates all of the terms of the Loan Documents that were not expressly modified by the Loan Modification and that the Loan Modification did not expressly modify the Loan Documents' escrow requirements.

In reviewing the Loan Modification, it is clear that although the Loan Modification amends and/or supersedes certain terms contained in the Loan Documents, it does not expressly require or not require the payment of insurance premiums into escrow. To the contrary, with respect to escrow, it provides as follows:

> [t]his Agreement does not waive future escrow requirements. If the Loan includes collection for tax and insurance premiums, this collection will continue for the life of the Loan.

(Am. Compl. Ex. F-3, at ¶3(B)). The Loan Modification also provides that:

> [t]he Mortgage and Note together, as may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement have the meaning given to them in the Loan Documents.

(*Id*. at Preamble at ¶1). As argued by Defendant, pursuant to the clear terms of the Loan Modification, the Loan Documents continue to bind the parties unless "expressly modified" by the Loan Modification. Specifically, the Loan Modification provides that Plaintiffs agree:

> [t]hat all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, or by the U.S. Bankruptcy Code, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

(*Id*. at ¶(3)(D)). As such, one must look to the Loan Documents, and, in particular, the Mortgage[5] to determine the requirements with respect to escrow.[6] To that end, the Mortgage provides the following with respect to escrow:

---

[5] It is well-settled that this Court may look to and rely upon an authentic document upon which the complaint is based when the defendant attaches such a document to its motion to dismiss. *See Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993). Here, Plaintiffs'

> Funds for Escrow Items: Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items . . . (c) premiums for any and all insurance required by Lender under Section 5 . . . These items are called "Escrow Items."

(ECF 18-1, Mortgage at §3). Section 5 of the Mortgage requires Plaintiffs to maintain hazard insurance (homeowner's insurance) for the property. (*Id*. at §5). What both parties inexplicably miss, however, is that §3 of the Mortgage goes on to permit the lender (Defendant) to waive any or all of the borrower's escrow obligations. That provision provides:

> Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver

---

claims are premised in large part upon the interpretation of the Loan Modification, which incorporates the terms of the Mortgage, a copy of which Defendant has attached to its reply in support of its motion to dismiss. [ECF 18-1]. Plaintiffs do not dispute this document's authenticity. As such, this Court may consider the Mortgage without converting the underlying motion to dismiss to a motion for summary judgment.

[6]    Plaintiffs point to the parties' cross-out of the word "insurance" in Paragraph 2(B) to support their contention that the Loan Modification sets out the parties' intention that Plaintiffs' monthly mortgage payment not include a sum for insurance premiums. This argument is misplaced since the provision in which the word "insurance" is crossed-out pertains only to the modified principal balance and does not expressly require or not require the payment of insurance to Defendant for escrow nor does it expressly modify the escrow requirements of the Loan Documents.

as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

(*Id*. at §3). This provision, which was not expressly modified by the Loan Modification, clearly provides that Plaintiffs are obligated to pay insurance premiums into escrow ***unless*** the escrow requirement is waived by Defendant in writing.

While neither party directly references this "waiver" provision contained in the Mortgage, Plaintiffs' amended complaint relies upon and attaches a series of correspondence between the parties through their respective counsel and/or representatives prior to final execution of the Loan Modification in which Defendant purports to agree that Plaintiffs' monthly mortgage payment will not include escrow of insurance premiums. In particular, at Paragraph 27 of the amended complaint, Plaintiffs allege that the parties entered into a letter agreement,[7] as evidenced by an attached letter dated December 28, 2015, from Defendant to Plaintiffs (the "December 28 Letter"), through which the parties agreed that homeowner's insurance would not be required to be paid into escrow. (Am. Compl. at ¶27). The December 28 Letter from Defendant sets forth Plaintiffs' new monthly mortgage payment as follows:

> Your new principal and interest payment will be $980.96, plus a monthly escrow amount for taxes ~~and insurance~~ of $516.88, which equals a new total monthly payment amount of $1,497.84. This amount may change if there's an increase or decrease in your taxes or insurance premiums or other escrow items.

(Am. Comp. at Ex. F-1) (strike-out in original). As noted above, the words "and insurance" are crossed out and initialed. Similarly, the December 28 Letter from Defendant also provides:

---

[7] While Plaintiffs' contention that the attached letter constitutes a "letter agreement" is a conclusion of law subject to debate, the content of the letter may constitute a written waiver of Plaintiffs' obligation to escrow homeowner's insurance as permitted by Section 3 of the Mortgage.

>The terms of your modified loan will require that a portion of your new monthly payment be set aside in an escrow account for payment of your property taxes, ~~insurance premiums~~ and other fees as required. Any prior waiver of escrows will no longer be in effect. We'll pay your real estate taxes ~~and insurance premiums~~ as they come due from this account. Your initial monthly escrow payment will be $516.88. Please note that this is an estimated amount. Your escrow payment amount may adjust annually; therefore, the amount you must place in escrow will also adjust as permitted by law. You can expect your monthly payment to change after the first year.

(*Id.*) (strike-out in original). Again, the words "insurance premiums" are crossed out and initialed. This letter from Defendant can plausibly be construed as Defendant's "written waiver" of Plaintiffs' obligation to include fees for insurance premiums for escrow. As such, this Court finds that Plaintiffs' factual allegations, including, in particular, the December 28 Letter from Defendant and the facts surrounding it,[8] sufficiently plead a waiver of the escrow of insurance premiums requirement as permitted by the terms of the Mortgage. In light of this alleged written waiver, if in fact effective, Defendant's alleged misapplication of Plaintiffs' monthly mortgage payments and assessment of late fees and other charges could constitute unfair trade practices under the FCEUA and/or UTPCPL. Accordingly, Defendant's motion to dismiss Count II is denied.

---

[8] Plaintiffs' amended complaint also references and attaches email correspondence between Plaintiffs' counsel and Defendant's counsel which appears to support Plaintiffs' contention that the parties agreed that Plaintiffs would not be required to escrow insurance payments. (*See* Am. Compl. at ¶27(c); Ex. F-2). In its motion to dismiss, Defendant argues that the parol evidence rule bars Plaintiffs' introduction of extrinsic documents, like the correspondence described above, to vary the terms of the written, signed and fully-integrated Loan Modification agreement. While Defendant's statement of the law of the parol evidence rule appears to be correct, for purposes of this Court's decision here, the rule is inapplicable to the introduction of this correspondence as evidence of a "written waiver" as required by the Mortgage.

*Plaintiffs' "Regulation X" Claim (Count V)*

At Count V, Plaintiffs assert a RESPA claim for the violation of 12 U.S.C. §2605 premised on Defendant's alleged failure to comply with "Regulation X," in particular, 12 C.F.R. §1024.17. Defendant moves to dismiss this claim solely on the basis of its above-disposed of argument that Plaintiffs were required to pay insurance premiums into escrow. [*See* ECF 13-1 at p. 17]. Because this argument is without merit, at this stage of the litigation, Defendant's motion to dismiss Count V is denied.

**CONCLUSION**

For the reasons stated herein, Defendant's motion to dismiss is granted, *in part*, and denied, *in part*. Counts I, III, and IV are dismissed in their entirety. Count II is dismissed to the extent it relies upon Defendant's alleged status as a "debt collector" and/or a violation of the FDCPA only.[9] An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

[9] This matter will, therefore, proceed with the claims asserted against Defendant at Count II, to the extent premised on Defendant's status as an entity other than a "debt collector," and Count V.